JiCIACCIO, Judge.
Plaintiffs, Charles Ray Brumfield and Victoria Nicotra Brumfield, appeal from two trial court judgments maintaining defendants’ exceptions of prescription. We reverse and remand the case to the trial court for further proceedings.
In May 1992, plaintiff filed suit against Avondale Industries, Inc., its executive officers, its insurers, and various suppliers and manufacturers of asbestos and silica-containing products, including Mine Safety Appliances Company, Mississippi Valley Silica Co., Inc., Commercial Union Insurance Co., Federal Insurance Co., Highlands Insurance Co., and Aetna Casualty and Surety Co., Inc. Plaintiff alleged that in October 1991, he was diagnosed with silicosis and asbestosis as a result of his occupational exposure to asbestos and silica-containing products used in the course of his employment. Defendants filed exceptions of prescription to the claims of Mr. and Mrs. Brumfield. The trial judge granted defendants’ exceptions of prescription and dismissed plaintiffs’ suit against them.
In support of their exceptions of prescription defendants submitted the deposition testimony of Dr. Joseph Mabey, excerpts from the deposition of Dr. James Whittington, Brumfield’s occupational/environmental history form completed as part of Avondale’s Medical, Safety and Industrial Hygiene Program, and other documentary evidence. In opposition to the defendants’ exceptions, plaintiffs also submitted Dr. Mabey’s deposition and excerpts from RPr. Whittington’s deposition. In addition, plaintiffs submitted an affidavit from Charles Brumfield, medical reports and other documents from plaintiffs Avondale personnel records, and medical records from East Jefferson General Hospital.
Charles Ray Brumfield worked as a sandblaster at Avondale’s shipyard from 1964 to 1965 and 1970 through 1981. During the 1970’s, Avondale began testing its employees who were exposed to silica or asbestos dust for pulmonary disease. As part of its pulmonary surveillance program, Avondale had contracted with the Westbank Surgical Clinic, Ochsner Medical Foundation and Drs. Joseph Mabey, James Whittington and F.T. Gidman to administer chest x-rays and breathing tests to the employees. In May 1971, Dr. Gidman examined plaintiff and administered plaintiffs first chest x-ray. Dr. Gidman sent a report dated May 31, 1971, to Avondale stating that plaintiffs chest x-ray showed early signs of fibrosis. There is no evidence that plaintiff was informed of the results of the 1971 chest x-ray.
On May 15, 1980, plaintiff completed the occupational/environmental history form for Avondale’s Medical, Safety and Industrial Hygiene Program. In answering the question, “As an adult have you ever suffered from any of the following diseases? Asthma, Cancer, Hemophilia, Silicosis, Heart Disease, Diabetes, Epilepsy, Any Lung Problems, Asbestosis,” plaintiff responded in the blank next to “Any Lung Problems” that he had “spots on lungs for six years.”
Plaintiff underwent another chest x-ray in mid-1981 which indicated pulmonary pathology. As a result, Dr. Whittington referred plaintiff to Dr. Brooks Emory, head of the pulmonary disease section at Ochsner Clinic. On August 18,1981, Dr. Emory sent a report to Avondale stating that he had examined plaintiff and that although plaintiff had no evidence of pleural disease Rhe had radio-graphic evidence of silicosis. Dr. Emory recommended that plaintiff be informed of the diagnosis and be removed from any environment that would be injurious to his lungs. In his affidavit submitted to the court, plaintiff states that he had never received a copy of Dr. Emory’s report.
On August 31, 1981, Dr. Whittington met with plaintiff and advised him that he had “sand in his lungs or blasters’ disease” but did not tell him that he had been diagnosed with silicosis. Dr. Whittington indicated that at that time plaintiff was feeling well and was able to work. He informed plaintiff that if he was removed from the dusty environment his lung condition probably would not wor *1161 sen. On September 4, 1981, plaintiff was placed on “permanent restriction” at Avon-dale and told to avoid further exposure to dust in the workplace.
Each year following 1981, plaintiff continued to receive chest x-rays and pulmonary tests as part of the Avondale screening program. Following each examination he received a standard memo from the examining physician which stated:
There have been no significant changes in your chest x-ray and/or pulmonary function test since the last time the studies were conducted. You may continue working in your present job area using the proper respiratory protective devices.
Plaintiff continued to work full-time and received no treatment for silicosis. However, in January 1982, plaintiff filed a claim under the Longshore and Harbor Workers’ Compensation Act (LHWCA).
In November 1984, Dr. Mabey, a physician at Ochsner, assumed responsibility for the medical surveillance program at Avondale. He met with plaintiff on several occasions, and discussed his condition. Dr. Mabey also informed plaintiff that he had “sand in his lungs” but did not specifically use the term silicosis. When Dr. Mabey examined plaintiff on January 3, 1985, hej^sent him back to see Dr. Emory due to plaintiffs respiratory complaints and chronic bronchitis. On January 18, 1995, Dr. Emory examined plaintiff and concluded that he had silicosis. On February 11, 1985, Dr. Mabey met with plaintiff and explained to him Dr. Emory’s findings and the results of the pulmonary function tests.
In August 1987, plaintiff underwent another chest x-ray and pulmonary function test. On September 15, 1987, Dr. Mabey reported to plaintiff the new x-ray and lung capacity test results. The test results indicated the presence of silicosis and coalescing nodules in the upper lobe of the lung. According to Dr. Mabey, he specifically told plaintiff that the coalescence of nodules indicated plaintiffs lung condition was quite serious. However, in the written standard memo dated October 23, 1987 sent by Dr. Mabey to plaintiff reporting the results of the August 1987 test results, Dr. Mabey stated:
I have reviewed your medical tests (chest x-ray and/or pulmonary function test) taken in August 1987.
There have been no significant changes in your chest x-ray and/or pulmonary function test since the last time the studies were conducted. You may continue working in your present job area using the proper protective devices as needed.
Plaintiff saw Dr. Mabey three years later on September 26,1990, and Dr. Mabey noted in his records “patient knows well his pulmonary pathology.” According to Dr. Mabey, plaintiff told him he was fully aware of his lung problems.
In March 1992, after plaintiffs yearly chest x-ray indicated that he may have had bronchogenic carcinoma, plaintiff went to see Dr. Bernard Brach at East Jefferson Hospital. On March 25, 1992, following the administration of several tests, Dr. Brach diagnosed plaintiff with having silicosis, asbestosis and Igsilico-tuberculosis. Plaintiff filed suit on May 26, 1992. Defendants subsequently filed their exceptions of prescription which the trial court maintained.
On appeal, plaintiffs argue that their claim for damages as a result of Mr. Brumfield’s silico-tuberculosis had not prescribed because he was not diagnosed with silico-tuberculosis until March 1992 when he went to see Dr. Brach at East Jefferson Hospital. Alternatively, plaintiffs argue that Mr. Brumfield’s filing of a claim under the LHWCA in 1982 interrupted prescription on his tort suit filed in May 1992. Defendants, on the other hand, contend that plaintiff had actual notice that he had an asbestos and silica-related condition as early as 1984 and that Dr. Mabey specifically informed him that he had silicosis in 1985. They contend plaintiffs silico-tuber-culosis is merely a progressive state of silicosis and plaintiffs’ suit filed in May of 1992 was untimely.
LSA-C.C. art. 3492 provides that del-ictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained. Damage is considered to have been sustained, within the meaning *1162 of the article, only when it has manifested itself with sufficient certainty to support accrual of a cause of action. Cole v. Celotex Corporation, 620 So.2d 1154, 1156 (La.1993).
The doctrine of contra non valentem agere nulla currit praescriptio prevents the running of liberative prescription where the cause of action is not known or reasonably knowable by the plaintiff. It is often difficult to identify a precise point in time at which the claimant becomes aware of sufficient facts to begin the running of prescription. In re Medical Review Panel of Howard, 573 So.2d 472 (La.1991).
Prescription will not begin to run at the earliest possible indication that a ^plaintiff may have suffered some wrong. Prescription should not be used to force a person who believes he may have been damaged in some way to rush to file suit against all parties who might have caused that damage. On the other hand, a plaintiff will be responsible to seek out those whom he believes may be responsible for a specific injury. When prescription begins to run depends on the reasonableness of a plaintiffs action or inaction. Jordan v. Employee Transfer Corp., 509 So.2d 420, 423 (La.1987). The question is whether, in light of plaintiffs own information and the diagnoses he received, the plaintiff was reasonable to delay in filing suit. Cole, 620 So.2d at 1157.
In finding that plaintiffs’ claims had prescribed, the trial judge in her reasons for judgment stated:
“... In the present case the evidence demonstrated that as early as 1984, Mr. Brumfield had knowledge that he had a pulmonary disease that was related to sandblasting and that this disease might lead to silicosis. ... For these reasons, the court holds that at least by February, 1985, Mr. Brumfield knew of his condition and prescription began to run. Therefore, this action which was not filed until May, 1992, is prescribed.”
She further stated:
“Finally, there was an issue as to whether or not Mr. Brumfield’s silico-tuberculosis claim had prescribed. Mr. Brumfield’s treating physician Dr. Mabey’s [sic] stated in his deposition that Mr. Brumfield’s sili-co-tuberculosis is a complicated form of his silicosis. (See Dr. Mabey’s deposition testimony.) See also Grey v. Avondale Service Foundry, 305 So.2d 639 (La.App. 4th Cir.1974). Pursuant to the jurisprudence, prescription begins to run at the point of appreciable damage even when all of the damage has not yet been realized. Harvey v. Dixie Graphics, Inc., 593 So.2d 351 (La.1992). Considering the above, the court holds that silico-tuberculosis is a further complication of silicosis. Therefore, prescription for this condition also began to run in February 1985 when Mr. Brumfield was told by Dr. Mabey that he had silicosis. (See Dr. Mabey’s deposition.) For these ^reasons, the court holds that Mr. Brumfield’s claim for silico-tuberculosis has also prescribed.”
In reviewing the memoranda and accompanying exhibits submitted in support of and in opposition to defendants’ exceptions of prescription, we agree with the trial court that as of February 1985, plaintiffs silicosis had manifested itself with sufficient certainty to support accrual of a cause of action. Dr. Emory diagnosed plaintiff with having silicosis in January 1985 and in February 1985 Dr. Mabey met with plaintiff and fully explained to him Dr. Emory’s diagnosis. Nonetheless, based on the record before us, we find that the trial judge was clearly wrong in holding that silico-tuberculosis was a further complication of silicosis and therefore plaintiffs claim for silico-tuberculosis had also prescribed.
At the hearing on defendants’ exceptions of prescription, the trial judge stated:
“Now, as it relates to the distinction between silicosis and silico-tuberculosis, I have read the testimony that was placed in the record with regards to the depositions of the doctors. I don’t believe that there is a clear distinction between silicosis and silico-tuberculosis. I’m inclined to believe that they are one in the same.... ”
In support of her finding the trial judge relied on Dr. Mabey’s deposition. The pertinent portion of Dr. Mabey’s deposition transcript reads as follows:
*1163 Q. Did you tell Mr. Brumfield that he had silico-tuberculosis?
A. No, ma’am.
Q. So you’ve never discussed that with him?
A. No.
Q. Do you know what silico-tuberculosis means?
A. Yes, ma’am.,
IsQ. What is it?
A. Silicone nodules; tuberculosis might be contracted.
Q. Pardon me?
A. In those nodules, you may get tuberculosis.
Q. In those nodules you may get tuberculosis?
A. It’s possible.
Q. How do you contract it? Can you explain a little bit further of how one contracts—
A. You get around somebody that’s got TB. And we don’t see that much anymore. It’s not as prominent as it used to be.
Q. What is the cause of—
A. Tuberculosis?
Q. —silicotuberculosis?
A. It’s a combination of tuberculosis in the lung.
Q. Is it a separate disease from silicosis? A. It’s two diseases, tuberculosis and silicosis.
Q. Are you saying the term “silicosis” refers to the presence of two distinctive diseases in a person, tuberculosis and silicosis?
A. They’re both separate diseases.
Q. Is that what you are saying, silicotu-berculosis—
A. It is silicosis complicated by tuberculosis.
Q. And you never discussed tuberculosis with him?
A. I had no reason to. I had no reason to, from his chest x-ray or his clinical findings.
The foregoing colloquy clearly indicates that although Dr. Mabey characterized plaintiffs silico-tuberculosis as silicosis complicated by tuberculosis, silicosis Rand silico-tuberculosis are separate and distinct diseases. In view of Dr. Mabey’s deposition testimony, it is apparent that plaintiff had no reasonable basis to pursue a claim for damages as the result of silico-tuberculosis prior to Dr. Brach’s diagnosis of the disease in March 1992.
We further note that the trial judge cited our decision in Grey v. Avondale Service Foundry, 305 So.2d 639 (La.App. 4th Cir.1974) in holding that silico-tuberculosis was a complicated form of silicosis. We find her reliance on the decision in Grey to be misplaced. In Grey, plaintiff appealed from a judgment dismissing his claim for Workmen’s Compensation benefits under LSA-R.S. 23:1031.1, which provided that an employee disabled because of contraction of an occupational disease was entitled to compensation. Grey had worked as a chipper and grinder in Avondale’s metal shop for 17 years when he was diagnosed with silicosis. Shortly thereafter he developed tuberculosis. As a result, he could no longer work and filed a claim for worker’s compensation benefits. At trial, Grey’s treating physician testified that he was not disabled from work because of silicosis but rather from tuberculosis, and that silicosis did not cause tuberculosis but that silicosis predisposes a person to develop tuberculosis. The trial judge concluded that Grey was not disabled because of silicosis, an occupational disease, but rather tuberculosis, which was not compensable under the statute, and dismissed Grey’s claim. On appeal, we reversed and held that “[ujnder our mandate to interpret the Workmen’s Compensation statute liberally in favor of the employee, we have concluded that theré is sufficient relationship between plaintiffs silicosis, a listed occupational disease, and his ultimate disability so as to entitle him to benefits.” Nowhere in our opinion did we hold that silico-tuberculosis was a complicated form of silicosis. Rather, throughout the |10opinion silicosis and tuberculosis are referred to as two distinct and separate diseases with different causes.
In sum, we conclude that plaintiff cannot be charged with knowledge that he had sili-co-tuberculosis until 1992 and his cause of *1164 action against defendants for damages allegedly sustained as the result of silico-tubercu-losis has not prescribed. The trial judge was clearly wrong in holding otherwise.
Accordingly, for the reasons assigned, the judgments of the trial court dated May 18, 1995 and July 10, 1995, maintaining defendants’ exceptions of prescription are reversed and the case remanded to the district court for further proceedings.

REVERSED AND REMANDED.