JOAN BERNARD ARMSTRONG, Chief Judge.
 

 IxThe plaintiff-appellant, Ralph Hymel, appeals a judgment of July 21, 2008, granting the exception of res
 
 judicata
 
 of the defendants-appellees, J.D. Roberts and Commercial Union Insurance Company, and dismissing plaintiffs claims with prejudice. For the reasons that follow, we affirm.
 

 The trial court judgment recognized and enforced the “Release, Discharge and Indemnity Agreement” executed by the plaintiff on January 5, 1998 in the matter entitled
 
 In Re Asbestos Plaintiffs,
 
 Flight 6, No. 93-17362 of the Civil District Court for the Parish of Orleans. It is undisputed, that the proper procedural mechanism for interposing the defense of settlement or compromise (formerly also referred to as “transaction”) is the peremptory exception of res judicata.
 
 Rivett v. State Farm Fire and Casualty Co.,
 
 508 So.2d 1356 (La.1987). Therefore, the plaintiff assigns no procedural errors to the proceedings below.
 

 This was an asbestos claim and the settlement and release specifically included release of any and all future asbestos related mesothelioma and cancer claims. Plaintiff claims that he was exposed to asbestos while he worked at Avondale Shipyards from 1958-1972
 
 [1]
 
 . Plaintiff was diagnosed with asbestosis | ¿(but not meso-thelioma or any other form of cancer) in 1993, and he filed suit the same year against Avondale’s executives and insurers, a suit that was settled in 1998 for $15,000.00 when the plaintiff executed the aforementioned “Release, Discharge and Indemnity Agreement.” It is undisputed that the release encompassed the executive officers of Avondale and their insurers and it is only in that alleged capacity that the defendants-appellees are parties to this appeal. Unfortunately, it turns out that the plaintiff is one of those tragically unlucky victims whose exposure to asbestos eventually evolved into mesothelioma. As may be seen by reference to the many asbestos cases from this and other jurisdictions, mesothelioma can be expected to eventuate in a certain number of asbestos exposure cases. While it is impossible to predict which cases of asbestos exposure will progress to mesothelioma, it is predictable that at least some cases will do so. Undoubtedly, that is why the settlement included specific language releasing future claims for mesothelioma. The settlement was signed by the plaintiff in the presence of a notary and it is undisputed that the plaintiff was represented by Steven Murray of the Murray Law Firm and William Roberts Wilson, who are known to have substantial experience in the field of asbestos claims.
 

 The plaintiff takes the position that he was unaware of the possibility that he could eventually develop mesothelioma. In brief, the plaintiff set forth the basis of this second asbestos exposure related suit that is the subject of the instant appeal:
 

 Mr. Hymel never understood that the Agreement was intended to eliminate his right to bring a future personal injury suit in the event that he developed a second asbestos-related disease, even though Louisiana law would otherwise have permitted him to bring such a
 
 *1252
 
 claim. He did not know why the Agreement contained a reference to mesotheli-oma, but thought that this disease [ 3was mentioned because some of the other workers in the group being settled suffered from that disease.... Neither Ap-pellees nor his own lawyer ever explained the release terms to Mr. Hymel. And neither Appellees nor anyone else ever told Mr. Hymel that Article 2004 of the Louisiana Code barred enforcement of contractual agreements [
 
 2
 
 ] that “in advance, excludes or limits the liability of one party for causing physical injury to the other party.” .... Unaware of the possibility that he could still develop a second asbestos-related disease and in need of money to pay medical expenses [
 
 3
 
 ] and other bills, Mr. Hymel signed the Agreement in exchange for the $15,000 payment. [Emphasis added.]
 

 Therefore, in spite of having executed this settlement agreement in 1998 and receiving a substantial payment of $15,000.00 as an inducement, the plaintiff filed the instant claim on February 25, 2008, for mesothelioma which was dismissed with prejudice by the trial court on an exception of
 
 res judicata.
 

 When an exception of
 
 res judicata
 
 is raised, as it was in the instant case before the case is submitted by trial on the merits, the standard of review is manifest error.
 
 Medicus v. Scott,
 
 32,326 (La.App. 2 cir. 9/22/99); 744 So.2d 192, 196, citing
 
 Ortego v. State,
 
 96-1322 (La.2/25/97), 689 So.2d 1358 and
 
 Tarver v. Oliver Van Horn Co.,
 
 591 So.2d 1366 (La.App. 4 Cir.1991); See also,
 
 Ellison v. Michelli,
 
 513 So.2d 336, 339 (La.App. 4 Cir.1987).
 

 Public policy favors compromises and the finality of settlements.
 
 Brown v. Drillers Inc.,
 
 93-1019 (La.1/14/94), 630 So.2d 741;
 
 Rivett v. State Farm Fire &
 
 Cas.
 
 Co.,
 
 508 So.2d 1356 (La.1987). Compromises are favored in the law and the burden of proving the invalidity of a compromise is on the party attacking the agreement.
 
 Ellison, supra.
 

 The release contains the following language:
 

 It is further understood and agreed that the aforementioned provisions are intended to release and forever discharge the released parties from any and all liability on account of or in any way growing out of occupational diseases or conditions attributable to exposure to asbestos ... including ... any future or consequential condition or injury, including but not limited to death, mesothelio-ma, cancer, shortness of breath, fear of cancer or increased risk of cancer ... [Emphasis added.]
 

 This Court’s analysis in
 
 Bulot v. Intracoastal Tubular Services, Inc.,
 
 04-398, (La.App. 4 Cir. 11/3/04), 883 So.2d 1146, is equally applicable to the instant case.
 
 Bu-lot
 
 concerned a suit that was settled, followed by a second suit arising out of basically the same circumstances. In the first suit filed by one of the plaintiffs, Exxon-Mobil, among others, was sued. The plaintiff alleged certain respiratory conditions arising out of exposure to certain
 
 *1253
 
 substances. The settlement of that suit included a full and general release encompassing all claims “he now has” or which he “may hereafter acquire.” He later filed a second suit against ExxonMobil for certain other lung conditions arising out of exposure to certain substances. This Court made the following observation with which we still agree and find applicable to the instant case:
 

 We find that Kenneth Craft’s second lawsuit stems from the same juridical or material facts as the first lawsuit. The legal obligation of ExxonMobil was to protect Kenneth Craft from harm. Thus, the duty owed by ExxonMobil is the same in both lawsuits. Further, it is undisputed that Kenneth Craft compromised all claims against ExxonMobil by signing the receipt and release in 1988. Accordingly, we find no error in the trial court’s 1 ..¡sustaining ExxonMobil’s exception of res judicata in the Kenneth Craft suit. [Emphasis added.]
 

 Id.,
 
 04-398, p. 7, 883 So.2d at 1150-1151.
 

 There is ample jurisprudence in this area as may be seen by this Court’s analysis in
 
 Robbert v. Carroll,
 
 97-0854 (La.App. 4 Cir. 9/10/97), 699 So.2d 1103, and cases cited therein:
 

 The Louisiana Civil Code expressly provides that a transaction or compromise between two or more parties, who by mutual consent adjust their differences to prevent or resolve a lawsuit, carries force equal to the authority of adjudicated disputes. La. C.C. art. 3071;
 
 Brown v. Simoneaux,
 
 593 So.2d 939 (La.App. 4 Cir.1992). The subsequent discovery by a claimant that an injury was more serious than initially believed does not entitle the claimant to rescind the settlement and release agreement. La. C.C. arts. 3071, 3079, 3083;
 
 Jurado v. State Farm Mut. Ins. Co.,
 
 557 So.2d 266 (La.App. 4 Cir.1990). Article 3083 specifically provides that when parties settle disputes, issues that arise subsequent to the settlement do not give rise to grounds for rescission, unless the issues were purposely concealed by one of the parties to the settlement agreement.
 

 Although this Court invalidated a settlement and release agreement in
 
 Saunders v. NOPSI,
 
 387 So.2d 603 (La.App. 4 Cir.1980),
 
 writ denied,
 
 394 So.2d 614 (La.1980),
 
 Saunders
 
 is inapplicable to this case. In
 
 Saunders,
 
 this Court invalidated a settlement and release agreement based on the fact that both the claimant and the insurer mistakenly believed that the claimant had properly been examined by a physician, when in fact no thorough examination had occurred. [Emphasis added.]
 

 Robbert v. Carroll,
 
 97-0854 (La.App. 4 Cir. 9/10/97), 699 So.2d 1103, 1104-1105.
 

 When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. La. C.C. art.2046. It is not the province of the courts to relieve a party of a bad bargain, no matter how harsh.
 
 Capone v. Kenny,
 
 94-0888 (La.App. 4 Cir. 11/30/94), 646 So.2d 510;
 
 The Board of Com’rs of the Port of New Orleans v. Turner Marine Bulk, Inc.,
 
 629 So.2d 1278, (La.App. 4 Cir.1993);
 
 Kenny v. Oak Builders, Inc.,
 
 256 La. 85, 235 So.2d 386, 390 (1970).
 

 The plaintiff has cited no cases in which a court has invalidated a settlement where the future claim arose out of the original alleged dereliction of duty and was specifically mentioned in the release and the plaintiff was represented by counsel. In
 
 Breaux v. Mine Safety Appliances Co.,
 
 98-133 (La.App. 5 Cir. 8/25/98), 717 So.2d 1255, cited by the plaintiff, the release did not include mesothelioma as a released
 
 *1254
 
 claim. In fact, the court in
 
 Breaux
 
 specifically notes that, “the release does not use the words “cancer” or “mesothelioma.” The
 
 Breaux
 
 court went on to explain that:
 

 [I]t is not logical to expect that plaintiff intended to release defendant for the future manifestation of this type of cancer for $500. This is a terrible disease. If the agreement intended to include mesothelioma, defendant would surely have included it in the listed diseases. As plaintiff argues, this settlement was a nuisance settlement. Thus, we find that the language of the agreement does not include the contraction of this type of cancer which would not manifest for many years, nor did plaintiff intend to include it in the settlement. Plaintiff signed the agreement expressly because he did not have any of the asbestos related diseases at that time. Thus, we find that the trial judge erred in granting the exception of res judicata.
 

 Id.,
 
 98-133, p. 6, 717 So.2d at 1257. Thus, following the reasoning in
 
 Breaux
 
 we would reach a very different result in the instant case where the following facts are completely opposite those set forth in
 
 Breaux:
 
 (1) the settlement specifically covered both mesothelioma and cancer by name, (2) the plaintiff had an asbestos related disease at the time he signed the settlement (asbestosis); (3) it was for a 17sum thirty time greater than the settlement in
 
 Breaux
 
 and, therefore, cannot be characterized as a “nuisance settlement”; and (4) there is no indication in
 
 Breaux
 
 that the plaintiff had the potential to recover additional sums from other defendants as there is in the instant case.
 

 Another factor to consider in this case is that the defendant sued over fifty defendants in addition to those involved in this appeal. As defendant is hardly in a position to argue that he was not serious when he named those other parties as defendants, as that would involve an admission that his suit against those other defendants was frivolous, we may assume that plaintiff must believe he has a reasonable expectation of additional recovery from those other defendants. Therefore, the amount he received in settlement from the defendants involved in the instant appeal cannot represent the total of what he expects to collect from the defendants in the aggregate in this case. Therefore, he is not in a position to argue that he traded away his whole claim for mesothelioma for $15,000.00, although it would not have made any difference had he done so as long as the record shows that he did so, as it does.
 

 Moak v. American Auto. Ins. Co.,
 
 242 La. 160, 134 So.2d 911 (1961), cited by the plaintiff, involved a collision between an automobile in which Mrs. Moak, the plaintiff, was a passenger, and a train. Mrs. Moak sustained serious injuries. In
 
 Moak,
 
 when the plaintiff executed the settlement in question she was unrepresented and believed that she and her husband were receiving the $242.00 payment for property damage only and were reserving their rights for her personal injury claim. The court specifically noted that the amount paid equaled exactly the amount of property damage, less the deductible, and the adjuster for the insurance company admitted that the personal injury claim was not discussed during the ^negotiations. Unlike the
 
 Moak
 
 case, in the instant case, the plaintiff does not argue that the $15,000 was intended to act as compensation for property damage only, leaving no consideration for the compromise and release of his present and future personal injury claims. Thus, in
 
 Moak,
 
 there was objective factual evidence as well as disinterested third-party testimony supporting the plaintiffs assertion that the settlement was not intended to encompass her tort claim. In the instant case we
 
 *1255
 
 have only the plaintiffs self-serving assertion that the settlement was not intended to cover mesothelioma in spite of the clear language of the document he signed to the contrary.
 

 In
 
 Dimitri v. Dimitri,
 
 00-2641 (La.App. 4 cir. 1/30/02), 809 So.2d 481, also cited by the plaintiff, the plaintiff was injured in a slip and fall accident in a nightclub. The plaintiff was unrepresented and believed he was settling his medical expenses claim only. The plaintiffs position was supported by the fact that the amount of the settlement equaled exactly the amount of outstanding medical expenses and because the insurance adjuster admitted that he told the plaintiff that more funds would be forthcoming and there was no discussion regarding the personal injury claim at a time when the plaintiff was obviously still far from full recovery from serious injuries (his left wrist was still in a cast and his right arm was in a sling), and he was still undergoing treatment. The plaintiff had insufficient funds to pay his medical expenses and he believed that he was required to execute the form presented to him if he wished to be reimbursed for his current outstanding medical expenses. Moreover, when the check arrived, it was for $600.00 less than the amount called for in the written settlement agreement. The plaintiff returned the check to the insurer. The facts in
 
 Dimitri
 
 are clearly inapplicable to the instant case.
 

 InThe plaintiff also contends that under La. C.C. art.2004 the settlement agreement is unenforceable against injuries that only manifest themselves subsequent to the execution of the agreement and, therefore, could not have been claimed at the time of the settlement. La. C.C. art.2004 provides that:
 

 Any clause is null that, in advance, excludes or limits the liability of one party for intentional or gross fault that causes damage to the other party.
 

 Any clause is null that, in advance, excludes or limits the liability of one party for causing physical injury to the other party.
 

 It is obvious that the purpose of this article is to express the principle that it is against public policy to permit a pai’ty to obtain a license for the commission of future bad acts, i.e., if a party, in effect, were to receive in advance forgiveness for the commission of a future bad act, then it would act as an invitation, as it were, to commit the bad act. Society does not wish parties to do acts that cause injury to each other. Therefore, it is against public policy to enforce contracts that would allow parties to so. This has always been the case in Louisiana. It is manifestly inconsistent with public policy that a man should be permitted to stipulate a partial impunity for the commission of a future immoral act.
 
 Hayes v. Hayes,
 
 8 La. Ann. 468 (1852). However, where the bad act has already been committed the public policy is not the same. It is then too late to prevent the bad act. It is then time for another public policy to govern, the policy that favors settlement and compromise. Settlements are especially effective in situations where there is uncertainty for where there is certainty there is no reason to compromise. Where a party has performed an allegedly negligent act that has or could result in damage to another, then the uncertainty surrounding litigation, liability and extent of damages provides Infertile soil for compromise. In addition to the uncertainty of the success of litigation, is the uncertainty of what the
 
 seque-lae
 
 to personal injury might be. Personal injury claims would be impossible to settle were this Court to hold that, as a matter of law, every new post settlement symptom would give rise to a new claim regardless
 
 *1256
 
 of the express language of the settlement to the contrary.
 

 A compromise may not be rescinded for lesion, i.e., a compromise may not be rescinded because it is later determined that the bargain struck was a poor one. La. C.C. art. 3082. Therefore, the implication in plaintiffs argument that the $15,000.00 settlement for what eventuated into meso-thelioma was not legally sufficient is not persuasive.
 

 La. C.C. art. 3082 also states that “a compromise cannot be rescinded on grounds of error of law.” Therefore, any misunderstanding on the part of the plaintiff as to the law of settlements is no basis for invalidating this settlement.
 

 The subsequent discovery by a claimant that an injury was more serious than initially believed does not entitle the claimant to rescind the settlement and release agreement.
 
 Robbert v. Carroll,
 
 97-0854 (La.App. 4 Cir. 9/10/97), 699 So.2d 1103, 1104.
 

 The plaintiff contends that the burden is on the defendants “to establish the requisites for a valid compromise, including the parties’ intent to settle the differences being asserted in the action in which it is interposed,” citing
 
 Brown v. Drillers, Inc.,
 
 93-1019 (La.1/14/94)630 So.2d 741. As in
 
 Brown,
 
 the “Plaintiff [in the instant case] does not attack the validity of the release instrument; rather, [he] contends that it does not extend to the wrongful death claims asserted.”
 
 Id.,
 
 630 So.2d at 748. However, the
 
 Brown
 
 decision goes on to explain that:
 

 |nIt also follows that the compromise instrument is governed by the same general rules of construction applicable to contracts.
 

 LSA-C.C. Art.2046 sets forth a general rule of construction, providing that “[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent.”
 

 [[Image here]]
 

 LSA-C.C. Art. 3073 provides that a compromise agreement extends only to those matters that the parties expressly intended to settle and that the scope of the transaction cannot be extended by implication.
 

 Id.
 
 In the instant case, the written agreement expressly includes mesothelioma. Therefore, as the defendant does not contend that he was induced to sign the agreement on the basis of fraud or duress, the burden shifts to the defendant to show that the parties did not intend to settle the mesothelioma claim.
 

 The fact that mesothelioma was specifically mentioned in the release now before this court distinguishes it from the release in
 
 Brovm,
 
 a distinction which the
 
 Brown
 
 court indicated was determinative:
 

 Neither the district court nor the court of appeal considered this contractual intent issue, relying instead on
 
 Schiffman [v. Service Truck Lines, Inc.,
 
 308 So.2d 824 (La.App. 4th Cir.1974)], and
 
 Daigle v. Clemco Industries,
 
 613 So.2d 619 (La.1993), respectfully. In both of those cases, however, the release instrument expressly referred to death claims.
 

 Brown
 
 was a wrongful death claim brought after the death of the tort victim who, prior to his death, had signed a general release making no mention of future wrongful death claims. The Louisiana Supreme Court makes it clear in more than one place in
 
 Brown
 
 that there is no public policy against releasing future claims that arise out of a tortuous incident. First, the Court states that:
 

 | ^We agree with Defendants’ contention that
 
 Daigle
 
 disposes of Plaintiffs argu
 
 *1257
 
 ment that anticipatory releases of wrongful death actions should be treated differently than releases of other future actions, and thus decline Plaintiffs invitation to adopt an express waiver requirement.
 

 Brown, supra,
 
 at p. 753. The Court follows up with the following statement:
 

 While
 
 Daigle
 
 puts to rest the public policy concern raised by the release of such future actions,
 
 Daigle
 
 does not even consider the other concern of whether the parties adverted to the specific future cause of action allegedly released, which is the pivotal issue here.
 

 Id.,
 
 at p. 754.
 

 The plaintiff cites
 
 Brumfield v. Avondale Industries, Inc.,
 
 95-2260 (La.App. 4 Cir. 5/8/96), 674 So.2d 1159 and a concurring opinion by Justice Dennis in
 
 Cole v. Celotex,
 
 599 So.2d 1058 (La.1992), but neither case involve a settlement and, consequently, neither case has any bearing on the instant case.
 

 Houston Exploration Co. v. Halliburton Energy Services,
 
 269 F.3d 528 (5th Cir.La.2001), is distinguishable on several grounds. It involves an indemnity agreement, not a settlement and release; and, most importantly, the fault of the alleged tort feasor occurred after the agreement was executed, whereas in the instant case, the alleged fault of the defendants occurred many years prior to the execution of the settlement and release; and, finally, the agreement was upheld by the court.
 

 Occidental Chemical Corp. v. Elliott Turbomachinery Co.,
 
 84 F.3d 172 (5th Cir.La.1996), also involves an indemnity clause and not a settlement and release. In
 
 Occidental Chemical Corp.,
 
 the court refused to apply the indemnity clause to the gross negligence of the tort feasor that occurred after the agreement was entered in to.
 

 | tilt is easy to see why a court would not want to enforce an agreement that, in effect would give a prospective tort feasor a license to commit grossly negligent or intentional bad acts in the future. It would be an invitation to commit such acts. However, the same public policy considerations do not exist where parties negotiate a settlement and release that encompasses unknown consequences in the future of alleged fault that occurred in the past To do so does not encourage future bad acts. Bear in mind, that the last breach of duty alleged against the defendants-appellees that could have occurred in the instant case was in 1972, over twenty years prior to the filing of the original suit, over twenty-five years prior to the settlement, and over thirty-five year’s prior to the filing of this second asbestos related suit. There is no question that any breach of duty in the instant case occurred in the distant past.
 

 Where a settlement and release refer expressly to the claim sought to be released by the party seeking to enforce the settlement, that alone is sufficient to shift the burden to the party seeking to oppose the enforcement of the settlement and release to prove that there was no meeting of the minds or that there was fraud or ill practices. It is not sufficient to raise the issue to merely make the self-serving allegation that there was no meeting of the minds. A party represented by counsel may not defeat a written settlement and release that is unambiguous on its face by merely alleging that he did not understand it. Otherwise, no settlement would be enforceable without more litigation which defeats the whole public policy favoring settlements. Signatures on documents are not mere ornaments. Twe
 
 edel v. Brasseaux,
 
 433 So.2d 133 (La.1983);
 
 In re Succession of Berman,
 
 (La.App. 4 Cir. 7/26/06), 937 So.2d 437. If a party can read, it behooves him
 
 *1258
 
 to examine an instrument before signing it.
 
 Id.,
 
 05-0641 at pp. 11-12, 937 So.2d at 443:
 

 114A person who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, or that it was not explained or that he did not understand it.
 
 Smith v. Leger,
 
 439 So.2d 1203 (La.App. 1st Cir.1983).
 

 First South Farm Credit, ACA v. Gailliard Farms, Inc.,
 
 38,731, p. 3 (La.App. 2 Cir. 08/18/04); 880 So.2d 223, 225. There is little incentive to settle if a party to the settlement agreement may later seek to void it based merely on his self-serving statements, without more, and in the absence of any evidence of fraud or ill practices, that he misunderstood what he signed or that he did not intend to sign what he signed.
 

 We conclude this analysis with a statement by the Louisiana Supreme Court from
 
 Ortego v. State,
 
 96-1322 (La.2/25/97), 689 So.2d 1358 which restates what has already been said earlier in this opinion:
 

 A compromise instrument is the law between the parties and must be interpreted according to the parties’ intent.
 
 Ritchey v. Azar,
 
 383 So.2d 360, 362 (La.1980). It follows that the compromise instrument is governed by the same general rules of construction applicable to contracts.
 
 Brown,
 
 630 So.2d at 748.
 

 When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. LSA-C.C. art.2046. Article 2046 emphasizes that the process involves no further interpretation, as opposed to no interpretation at all. Expose’ Des Motifs of the Project of Titles III and IV of Book III of the Civil Code of Louisiana, p. 67 (1984); R. MacLean, Judicial Discretion in the Civil Law, 43 La. L.Rev. 45, 55-56 n. 28 (1982).
 

 Id.,
 
 689 So.2d at 1363.
 

 Pursuant to this analysis, we find that the settlement agreement clearly and unambiguously compromised any prospective claim that the plaintiff might have |1Rfor mesothelioma or cancer and that the trial court did not err in granting the defendants’ exception of
 
 res judicata.
 

 For the foregoing reasons, the judgment of the trial court is affirmed.
 

 AFFIRMED.
 

 [1]
 

 . The plaintiff sues J.D. Roberts in his capacity as an alleged executive officer of Avondale Shipyards. Mr. Roberts apparently does not admit to having acted in that capacity during the relevant time period.
 

 [2]
 

 . A compromise may not be rescinded on grounds of error of law. La. C.C. art. 3082.
 

 [3]
 

 . The implication that a party may have been induced by financial distress to enter into a compromise was specifically rejected by this Court in
 
 Hoover v. Boucvalt,
 
 99-0867, pp. 6-7 (La.App. 4 Cir. 11/24/99), 747 So.2d 1227, 1231, as a basis for overturning a settlement:
 

 Finally, the third pressure implied was that of financial duress. However, this court has already held that “the claim of financial straits does not give rise to duress.”
 
 Shepherd v. Allstate Insurance Co.,
 
 562 So.2d 1099, 1101 (La.App. 4 Cir.1990).