# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 16-712

**RAYMOND CHARLES CRESSY, ET AL.**

**VERSUS**

**HUFFINES HYUNDAI MCKINNEY, LP, ET AL.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. 84,772
HONORABLE LALA B. SYLVESTER, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## PHYLLIS M. KEATY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.

**Cooks, J., dissents and assigns written reasons.**

**AFFIRMED.**

**Pete Lewis**
**Sarah Delahoussaye Call**
**Lewis & Caplan**
**3631 Canal Street**
**New Orleans, Louisiana  70119**
**(504) 486-7766**
**Counsel for Plaintiffs/Appellants:**
     **Raymond Charles Cressy**
     **Yolanda Cressy**

**G. Bruce Parkerson**
**Jessica S. Savoie**
**Scott H. Mason**
**Plauché Maselli Parkerson L.L.P.**
**701 Poydras Street, Suite 3800**
**New Orleans, Louisiana  70139**
**(504) 582-1142**
**Counsel for Defendant/Appellee:**
     **Huffines Hyundai McKinney, LP**

**Gary G. Hebert**
**Charles S. Smith**
**McGlinchey Stafford, PLLC**
**601 Poydras Street, Floor 12**
**New Orleans, Louisiana  70130**
**(504) 586-1200**
**Counsel for Defendant/Appellee:**
     **FCA US LLC (formerly known as "Chrysler Group LLC")**

**KEATY, Judge.**

In this case stemming from a one-vehicle automobile accident, the trial court granted summary judgment in favor of Defendants and dismissed Plaintiff's product liability claims against them based upon a release which Plaintiff, a passenger in the vehicle, had previously entered into with the driver of the vehicle and his liability insurer, who were not named as defendants in this action. Plaintiff appeals. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

Raymond Charles Cressy was rendered a quadriplegic in a one-vehicle accident (the accident) that occurred in Natchitoches Parish on October 12, 2010. The accident happened when the driver of the 2006 Dodge Durango in which Raymond was a guest passenger lost control of the vehicle when he swerved to avoid a tire in the roadway, causing the vehicle to enter into the median and roll over several times. The vehicle was owned by Raymond's sister, Yolanda Cressy, and was being operated by Raymond's brother, Wayne Cressy. Yolanda had purchased the used vehicle from Huffines Hyundai McKinney, LP, (Huffines) in March of 2010.

On October 11, 2011, Raymond[1] filed the instant petition for damages against Huffines and Chrysler Group, LLC (Chrysler),[2] the manufacturer of the vehicle, (sometimes hereafter collectively referred to as Defendants), alleging that

---

[1] Raymond died intestate in late 2012, leaving behind no surviving spouse or children. After his death, Defendants filed a motion to substitute Raymond's alleged biological father as his legal successor. Thereafter, Raymond's siblings filed a motion to be substituted as his legal successors. After a hearing, the trial court appointed Raymond's siblings as the proper party plaintiffs. Accordingly, when we say "Plaintiff" or "Plaintiffs" we may be referring to Raymond or to his siblings who are now pursuing his survival claims. We note that Raymond's heirs did not assert wrongful death claims against Defendants.

[2] At some point between the filing of the petition and motion for summary judgment, Chrysler Group LLC became FCA US LLC. We will refer to it as "Chrysler" in this opinion.

the vehicle was unreasonably dangerous and seeking damages against them pursuant to the Louisiana Products Liability Act, La.R.S. 9:2800.51-.60. [3] Defendants filed a joint motion for summary judgment (MSJ) on May 20, 2015, asserting that Raymond's claims against them should be dismissed because of a release Raymond entered into on October 19, 2011, through Yolanda acting as his agent-in-fact, whereby he released all "persons, firms or corporation of and from any and every claim" arising from the October 10, 2010 automobile accident. Plaintiffs opposed the MSJ on the basis that Raymond, who died on December 31, 2012, as a result of the injuries he sustained in the accident, only intended to settle his claims against Wayne and Wayne's insurer, GEICO,[4] when Yolanda signed the release on his behalf. A hearing on the MSJ took place on November 19, 2015, following which the parties were given time to file post-trial briefs. On March 26, 2016, the trial court signed a judgment granting summary judgment in Defendants' favor. Defendants filed a motion for partial new trial seeking to amend the judgment to provide that Plaintiffs' claims against them were dismissed with prejudice, as was noted in the reasons for judgment. The trial court granted Defendants' motion to amend and issued a new judgment on June 1, 2016, granting Defendants' motion for summary judgment, dismissing Plaintiffs' claims with prejudice, and certifying the judgment as final and appealable.

Plaintiffs now appeal, alleging that:

---

[3] Yolanda was also a named plaintiff in that action, appearing on behalf of her minor son, Dante Cressy, who was a guest passenger and suffered injuries in the October 12, 2010 accident. Dante's claims are not at issue in this appeal.

[4] Although the GEICO policy is not in the appellate record, Yolanda stated in an affidavit signed on June 17, 2015, that the GEICO policy belonged to her and insured Wayne as a permissive driver of her vehicle. Yolanda's affidavit was attached as Exhibit C to Plaintiff's opposition to Defendants' MSJ.

The Trial Court erred in finding that the Plaintiffs failed to present substantiating evidence of mistaken intent in signing the Release. In accordance with the evidence presented, Plaintiff, Yolanda Cressy, did not intend to release the Defendants named in the underlying suit, creating a genuine issue of material fact regarding whether the subject claims were compromised. Thus, the trial court erred in granting summary judgment in light of the genuine issue of material fact.

## LAW

Summary judgment "shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3). "A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate." *Smitko v. Gulf S. Shrimp, Inc.*, 11-2566, p. 7 (La. 7/2/12), 94 So.3d 750, 755.

The Louisiana Supreme Court has held that "[s]ummary judgment is seldom appropriate for determinations based on subjective facts, such as motive, intent, good faith, knowledge and malice." *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 28 (La. 7/5/94), 639 So.2d 730, 751. Nevertheless, whether a plaintiff's claims against a certain defendant should be dismissed because of a release entered into by the plaintiff can be resolved in the context of a motion for summary judgment. *See*, *e.g.*, *Hudson v. Progressive Sec. Ins. Co.*, 43,857 (La.App. 2 Cir. 12/10/08), 1 So.3d 627, *writ denied*, 09-235 (La. 3/27/09), 5 So.3d 148; *Palmer v. Walker*, 09-756 (La.App. 5 Cir. 1/12/10), 31 So.3d 443.

## DISCUSSION

The facts are not at issue in this appeal. On December 31, 2010, several months after the accident, Raymond granted Yolanda power of attorney (POA),

3

authorizing her to conduct his affairs.  The POA referred to Raymond as "Principal" and Yolanda as "Agent" and gave her the full authority to, among other things:

> 11) Sue in PRINCIPAL's name and on PRINCIPAL's behalf as well as be sued on behalf of PRINCIPAL, including the right to appear before all courts of law on PRINCIPAL's behalf for all purposes, and further to compromise or refer to arbitration any claims (whether asserted judicially or not) for or against PRINCIPAL, and to make transaction[s] in matters of litigation[.]

On the same date the POA was signed, Yolanda, on behalf of Raymond, signed a Contract of Employment with attorney James C. Lawrence, Jr. (Attorney Lawrence).  Ten months later, on October 11, 2011, Raymond, through attorney Pete Lewis (Attorney Lewis), filed the instant petition for damages.

The release that Yolanda signed on Raymond's behalf on October 19, 2011, was notarized by Attorney Lawrence and provided, in pertinent part, as follows (emphasis added):

### RELEASE
### In Full of All Claims

Claim #: 0338694670101032

**I, Raymond Cressy** , Releasor(s), . . . being over the age of majority, for and **in consideration of checks for the sum of twenty five thousand dollars and 00/100 ($25,000.00)** . . ., the receipt of which is hereby acknowledged, **do for myself/ourselves, my/our heirs, executors, administrators, successors and assigns, hereby remise, release, and forever discharge Wayne Cressy and Government Employees Insurance Company**, Releasee(s), successors and assigns, and/or his, her or their associates, heirs, executors and administrators, **and all other persons, firms or corporations of and from any and every claim, demand, right or cause of action, of whatever kind or nature, on account of or in any way growing out of any and all personal injuries and consequences** thereof, including, but not limited to, all causes of action preserved by the wrongful death statute applicable, any loss of services and consortium, any injuries **which may exist but which at this time are unknown and unanticipated and which may develop at some time in the future**, all unforeseen developments arising from known injuries, **and any and all property damage resulting or to result from an accident that occurred on**

4

**or about the 12th day of October, 2010 at or near Natchitoches Parish, LA** and especially all liability arising out of said accident including, but not limited to, all liability for contribution and/or indemnity.

AS A FURTHER CONSIDERATION FOR THE MAKING OF SAID SETTLEMENT AND PAYMENT, **IT IS EXPRESSLY WARRANTED AND AGREED**:

(1)     **That I/we understand fully that this is a final settlement and disposition of the disputes both as to the legal liability for said accident, casualty, or event and as to the nature and extent of the injury, illness, disease and/or damage which I/we have sustained** . . . .

Near the release's signature line, which was signed "Yolanda Cressy P.O.A. Raymond Cressy," was the phrase "THIS IS A RELEASE IN FULL." The release was witnessed by Desiree Singletary who certified that Yolanda signed it in her presence and that Yolanda "acknowledged that he/they understood it fully."

In their MSJ, Defendants argued that "the broad language of the Cressy Release is clear, unambiguous, and enforceable as written" such that no genuine issues of material fact remained and entitling them to summary judgment dismissing Raymond's claims against them. Defendants relied on Louisiana jurisprudence which, based upon codal principles of contract interpretation, enforced releases containing language nearly identical to the release at issue herein. *See*, *Baudoin v. Montoya,* 07-910 (La.App. 3 Cir. 1/30/08), 974 So.2d 877, *writ denied*, 08-479 (La. 5/2/08), 979 So.2d 1284; *Hudson v. Progressive Sec. Ins. Co.*, 43,857 (La.App. 2 Cir. 12/10/08), 1 So.3d 627, *writ denied*, 09-235 (La. 3/27/09), 5 So.3d 148; *Silva v. State Farm Mut. Auto. Ins. Co.*, 09-686 (La.App. 5 Cir. 3/23/10), 38 So.3d 934, *writ denied*, 10-932 (La. 6/25/10), 38 So.3d 342; *Palmer v. Walker*, 09-756 (La.App. 5 Cir. 1/12/10), 31 So.3d 443.

5

In opposition to Defendants' MSJ, Plaintiffs argued that their claims against Defendants should not be dismissed because Raymond intended to compromise only his claims against Wayne and GEICO when he signed the release in exchange for the limits of the GEICO policy. Plaintiffs pointed to La.Civ.Code art. 3076's directive that "[a] compromise settles only those differences that the parties clearly intended to settle, including the necessary consequences of what they express." Nonetheless, Plaintiffs acknowledged that "[w]hen the words of a contract are clear and explicit . . . , no further interpretation may be made in search of the parties' intent." La.Civ.Code art. 2046. Plaintiffs cited *Brown v. Drillers, Inc.*, 93-1019 (La. 1/14/94), 630 So.2d 741, 749, as support for the "jurisprudential rule [that] the parties to a release instrument are permitted to raise a factual issue as to whether unequivocal language in the instrument was intended to be unequivocal." Even so, Plaintiffs were mindful of the caveat noted in *Brown*:

> Louisiana courts, however, have tempered that jurisprudential rule, recognizing that absent some substantiating evidence of mistaken intent, no reason exists to look beyond the four corners of the instrument. Utilizing a case-by-case, factual analysis, Louisiana courts have limited the rule's application to cases in which substantiating evidence is presented establishing either (1) that the releasor was mistaken as to what he or she was signing, even though fraud was not present; or (2) that the releasor did not fully understand the nature of the rights being released or that the releasor did not intend to release certain aspects of his or her claim. When the factual circumstances surrounding the execution of the release instrument do not fall within either of the above categories, Louisiana courts, applying LSA–C.C. Art. 2046's general rule of construction, have not hesitated to confine their analysis to the four corners of the instrument.

*Id.* Plaintiffs attached four exhibits to their opposition as "substantiating evidence" of Raymond's lack of intent to release his claims against Defendants. *Id.* Exhibit A was the petition for damages in the instant matter. Plaintiffs contended that had Raymond intended to settle his claims against Defendants, he would not have filed

suit against them eight days prior to his execution of the release. Plaintiffs further contended that the fact Wayne and GEICO were not named as defendants in this lawsuit demonstrated Raymond's belief that his claims against them "were resolved" while his "claims against Huffines and Chrsyler remained active." Along those lines, Plaintiffs contended that had Raymond intended to compromise all of his claims, including those against Huffines and Chrysler, he would have filed a motion to dismiss this suit following his execution of the release on October 19, 2011, a mere eight days after the instant petition was filed. Pointing to the fact that this matter has been actively litigated for over three and one-half years following the date the release was signed, Plaintiffs contended that "the parties belie[ved] that the claims against Huffines and Chrysler were not compromised by the [r]elease."

Exhibit C to Plaintiffs' opposition was an affidavit Yolanda signed on June 17, 2015, wherein she stated:

3. That she executed a Release on behalf of Raymond Cressy in order to obtain the proceeds from her insurance policy, insuring Wayne Cressy as a permissive driver of the Dodge Durango;

4. That she did not intend to settle all claims arising from the accident in the Release;

5. That she only intended to settle Raymond Cressy's claims against GEICO and Wayne Cressy, in exchange for GEICO's policy limits[.]

Plaintiffs also attached as Exhibit B to their opposition excerpts from a deposition Yolanda gave on July 9, 2013, wherein she stated that she thought Raymond "got a settlement" from GEICO that was enough to pay the balance owed on her vehicle. She further stated her understanding that part of the proceeds from the settlement with GEICO were "supposed to go towards [Raymond's] medical bills" but she did not think that GEICO had issued any money to him at

7

that time. Finally, Exhibit D to Plaintiffs' opposition to Defendants' MSJ was a September 12, 2013 Updated Lien Letter to Attorney Lewis advising him of a $232,544.21 Medicaid lien in favor of the State of Louisiana, Department of Health and Hospitals, which represented the amount "paid by the Medicaid program" on Raymond's behalf. Plaintiffs emphasized that Raymond was rendered a quadriplegic in the accident, and he thereafter required around-the-clock medical care. Given the extent of Raymond's actual damages, as evidenced by the substantial Medicaid lien, in comparison to the $25,000.00 that he received in the settlement with GEICO, Plaintiffs asserted that it is "unreasonable to conclude that the Plaintiff intended to settle all claims arising from the subject accident for such a small amount."

Arguing that the circumstances show that Raymond did not intend to release his claims against Huffines and Chrysler, Plaintiffs claim that this court, on de novo review, should reverse the trial court's grant of summary judgment in Defendants' favor because a genuine issue of material fact remains as to whether the product liability claims made the subject of this lawsuit were compromised.

In their appellee briefs, Defendants assert that the trial court properly granted summary judgment in this matter because the release language was clear, broad, and unambiguous and because the exhibits offered by Plaintiffs in opposition to Defendants' MSJ do not constitute "substantiating evidence of mistaken intent" so as to permit a court to look beyond the four corners of the release. *Brown*, 630 So.2d at 749.

With regard to the timing of the filing of the petition for damages in this case, Defendants submit that the fifth circuit has held that the filing of a lawsuit before a plaintiff settled with other responsible parties refuted the plaintiff's lack-of-intent

8

argument. Instead, the court held that it demonstrated that the plaintiff knew of her claims against the parties named in the lawsuit when she later signed a release of her claims arising out of an automobile accident. See *Silva*, 38 So.3d at 938, wherein the fifth circuit noted:

> Plaintiff had filed suit previously against State Farm, and was clearly aware of the claim against the UM carrier which arose directly out of the automobile accident. The broadness of the [release] language is clear and unambiguous. It evidences intent to settle and dismiss all claims against anyone arising out of the accident which is the basis of this suit, including State Farm.

Defendants also refute Plaintiffs' assertion that Yolanda's deposition testimony that she did not understand the nature of the rights she was releasing amounts to "substantiating evidence of mistaken intent." *Brown*, 630 So.2d at 749. Defendants refer this court to *Hymel v. Eagle, Inc.*, 08-1287, pp. 13-14 (La.App. 4 Cir. 3/18/09), 7 So.3d 1249, 1257-58 (citations omitted), *writ denied*, 09-873 (La. 5/15/09), 8 So.3d 590, wherein the fourth circuit held:

> A party represented by counsel may not defeat a written settlement and release that is unambiguous on its face by merely alleging that he did not understand it. Otherwise, no settlement would be enforceable without more litigation which defeats the whole public policy favoring settlements. Signatures on documents are not mere ornaments. If a party can read, it behooves him to examine an instrument before signing it.
>
> > A person who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, or that it was not explained or that he did not understand it.
>
> There is little incentive to settle if a party to the settlement agreement may later seek to void it based merely on his self-serving statements, without more, and in the absence of any evidence of fraud or ill practices, that he misunderstood what he signed or that he did not intend to sign what he signed.

9

Defendants also point out that although Yolanda's deposition was taken less than two years after she signed the release, she had trouble remembering the circumstances concerning the release.

Defendants submit that the affidavit Yolanda signed more than three-and-a-half years after she signed the release, and only in response to Defendants' MSJ, is self-serving, conclusory, and devoid of specific underlying facts such that it cannot serve to create an issue of genuine material fact to defeat summary judgment. *See Dumas v. Angus Chem. Co.*, 31,969, p. 7 (La.App. 2 Cir. 8/20/99), 742 So.2d 655, 661 ("Affidavits that are devoid of specific underlying facts to support a conclusion of ultimate 'fact' are not legally sufficient to defeat summary judgment."). Moreover, Defendants claim that it is illogical to believe that Yolanda's memory concerning the release would be better when she signed the affidavit in June of 2015 than it was at her July 9, 2013 deposition.

Finally, Defendants submit that the September 12, 2013 Medicaid letter offered by Plaintiffs in opposition to the MSJ is irrelevant to the issues of Yolanda's intent when she signed the release nearly two years before the letter was generated. Defendants refute Plaintiffs' claim in their brief to this court that "an absurd consequence will result in the event the Court determines that all of the Plaintiffs' claims are compromised." Defendants refer this court to our previous pronouncement that "[a] compromise therefore carries the authority of things adjudged, and cannot be attacked for error of law or lesion." *Montgomery v. Montgomery*, 11-1223, p. 5 (La.App. 3 Cir. 4/11/12), 87 So.3d 376, 380. They also point to La.Civ.Code art. 3082 which provides that while "[a] compromise may be rescinded for error, fraud, and other grounds for the annulment of contracts[,] a compromise cannot be rescinded on grounds of error of law or

10

lesion." Defendants further note that "[p]ublic policy favors compromise agreements and the finality of settlements" and that "[a] compromise that releases all claims is not ambiguous simply because it is broad." *Hudson*, 1 So.3d at 633.

Given the devastating injuries suffered by Raymond and the significant damages that he suffered in the automobile accident made the subject of this lawsuit, we have no doubt that Raymond did not intend to release Huffines and Chrysler when Yolanda signed the release with Wayne and GEICO in exchange for the $25,000.00 limit of the GEICO policy. In fact, the attorney for Chrysler admitted at oral arguments that the result that the law mandates in this matter is harsh. Nevertheless, this court has previously held that:

> Equitable considerations and estoppel cannot prevail in conflict with the positive law. La.C.C. art. 4; *Palermo Land Co. v. Planning Comm'n*, 561 So.2d 482 (La.1990).
>
> La. Civ.Code art. 4 provides:
>
> > When no rule for a particular situation can be derived from the legislation or custom, the court is bound to proceed according to equity. To decide equitably, resort is made to justice, reason, and prevailing usages.
>
> There is a rule for this situation provided expressly by positive law which we have already determined in this case is clear and unambiguous.

*Gunderson v. F.A. Richard & Associates*, 09-1498, p. 15 (La.App. 3 Cir. 6/30/10), 44 So.3d 779, 789.

"It is not the province of the courts to relieve a party of a bad bargain, no matter how harsh." *Hymel*, 7 So.3d 1249, 1253. Moreover, the Louisiana Supreme Court has long recognized that "[c]ourts are not created to relieve men of their bad bargains made. Where a clause of a contract is clear and unambiguous,

'the letter of it should not be disregarded, under the pretext of pursuing the spirit.'"

*Maloney v. Oak Builders, Inc.*, 256 La. 85, 97-98, 235 So.2d 386, 390 (1970).

Here, Plaintiffs do not seek to revoke or nullify the release but rather to have this court find that it does not apply to Defendants. This court was faced with a similar scenario in *Baudoin*, 974 So.2d 877, 877-78 (footnotes omitted), the facts of which we set out as follows:

> [O]n August 10, 2004, the plaintiff, Jeffery J. Baudoin (Baudoin) was injured when a vehicle operated by the defendant, Carlos Ramirez Montoya (Montoya), collided with his vehicle. Baudoin instituted this suit against Montoya and his automobile liability insurer, United Automobile Insurance Company (United). By amended petition, Baudoin added Midwest Air Technologies (Midwest) as a defendant, alleging that Montoya was in the course and scope of his employment with Midwest when the accident occurred. During discovery, Midwest averred that it was not Montoya's employer in that he was "on loan" from Lone Star Temporary Services, L.C. (Lone Star).

> On November 18, 2005, Baudoin signed a receipt and release document whereby he settled his claims with Montoya and United. Baudoin subsequently filed a motion to dismiss the suit and all claims against Montoya and United with prejudice. The trial court signed the order of dismissal on December 7, 2005. In a second supplemental and amended petition, Baudoin added Lone Star as a defendant. In response, Lone Star filed a motion for summary judgment, alleging that "Montoya was not employed by Lone Star . . . on August 10, 2004 or any other time and was not on a mission for Lone Star . . . at the time of the motor vehicle accident which serves as the basis for . . . Baudoin's claims." The trial court denied the motion. Lone Star subsequently filed a motion to dismiss, in which it moved "pursuant to La.Code Civ.P. arts. 927(2)2 and 966, to dismiss plaintiff's claims in this matter on the grounds that Jeffery J. Baudoin's claims against Carlos Ramirez Montoya have been settled." Midwest filed a motion to dismiss on the same grounds. Following a hearing on February 21, 2007, the trial court ordered that Baudoin's claims against Lone Star and Midwest be dismissed with prejudice.

We affirmed on appeal, noting:

> [W]e find that the broad language of the receipt and release agreement "evinces nothing other than an intent to settle and dismiss all claims against anyone arising of the accident made the basis of the lawsuit." *Black v. Anderson,* 06-891, p. 8 (La.App. 5 Cir. 3/13/07), 956 So.2d

20, 24, *writ denied,* 07-794 (La.6/1/07), 957 So.2d 180. Such intent is established from the following language:

> [Baudoin] does hereby release, acquit and forever discharge . . . *any and all other persons, firms, corporations . . . , partnerships and parties* whomsoever, *from any and all past, present and future claims,* demands, compensation, medical expenses, costs, expenses, penalties, attorney's fees, damages *and any and all causes and rights of action,* whatsoever, which he may or might have and to which he may be entitled, known and unknown, anticipated and unanticipated, under the workers' compensation laws of the State of Louisiana, the tort laws, and any and all other laws whatsoever, *in any way resulting from and/or to result from the accident which occurred on or about August 10, 2004.*

> (Emphasis added). Baudoin did not attempt to limit the release language to Montoya and United. Nor did he present any evidence to prove his "lack of intention to release all defendants, when the release plainly states all parties are released[.]" *Migliore,* 474 So.2d at 984. *Cf. Mallet v. Credo Oil & Gas, Inc.,* 534 So.2d 126 (La.App. 3 Cir.1988), *writ denied,* 536 So.2d 1237 (La.1989) (wherein this court found that "the language used by plaintiff in the partial dismissal of [the defendant] clearly showed his intent not to release its insurers(s).")

> In light of this evidence, we conclude that the trial court did not err in dismissing Baudoin's claims against Lone Star and Midwest with prejudice.

*Id.* at 880.

After having completed a de novo review of the evidence presented in favor of and against Defendants' MSJ, we conclude that the broad language of the release evidences Raymond's intent to compromise his claims against all persons or corporations arising out of the October 12, 2010 accident upon which the instant lawsuit arose. Accordingly, the trial court did not err in granting summary judgment in favor of Defendants and dismissing Plaintiffs' claims against them with prejudice.

13

**DECREE**

For the foregoing reasons, we affirm the trial court decision granting summary judgment in favor of Defendants, Huffines Hyundai McKinney, LP, and Chrysler Group, LLC, dismissing the claims of Plaintiff, Raymond Charles Cressy, against them with prejudice. All costs of this appeal are assessed against Plaintiffs.

**AFFIRMED**.

## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 16-712

**RAYMOND CHARLES CRESSY, ET AL.**

**VERSUS**

**HUFFINES HYUNDAI MCKINNEY, LP, ET AL.**

**COOKS, J., dissenting.**

I respectfully dissent from the majority's decision to affirm the grant of summary judgment in this case. I do not oppose the majority opinion solely because it affirms what is, by all parties' acknowledgment, a very harsh result; but most importantly because it is in contravention of the law.

On an appeal involving a motion for summary judgment, the court's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of material fact. All doubts should be resolved in favor of the nonmoving party. *Hines v. Garrett*, 04-806 (La. 6/25/04), 876 So.2d 764. The law is clear that summary judgment is seldom appropriate for determinations based on subjective facts such as motive, intent, good faith, knowledge and malice. *Hogg v. Chevron USA Inc.*, 09-2632 (La. 7/6/10), 45 So.3d 991; *Jones v. Estate of Santiago*, 03-1424 (La. 4/14/04), 870 So.2d 1002.

The majority quotes the *Hymel* case wherein the court stated it "is not the province of the courts to relieve a party of a bad bargain, no matter how harsh." 7 So.3d at 1253. I find it incorrect to equate what happened here as a "bad bargain," when, as the majority opinion notes, there was *never any intent* "to release Huffines and Chrysler when Yolanda signed the release." The only thing bargained for in the release was to settle with GEICO for the limits of its policy.

No "bargain" was ever entered into between Plaintiffs and Huffines and/or Chrysler, thus the reliance on *Hymel* is misplaced.

The majority also cites this court's opinion in *Gunderson*, 44 So.3d at 789, for the proposition that "[e]quitable considerations and estoppel cannot prevail in conflict with the positive law." However, in my view the positive law in this case is in favor of the Plaintiffs. Louisiana Civil Code article 2045 provides that "[i]nterpretation of a contract is the determination of the common intent of the parties." As has been set forth, there is no reasonable belief by anyone [including the defendants and my colleagues] that there was any intent to release Huffines and Chrysler in the settlement contract entered into with GEICO.

It is true, La.Civ.Code art. 2046 provides that, "[w]hen the words of a contract are clear and explicit and lead to no *absurd consequences*, no further interpretation may be made in search of the parties' intent." (Emphasis added) After examining the facts of this case, it is difficult to fathom a more absurd result than what would occur in this case if the motion for summary judgment is granted. The facts are clear that eight days *prior* to the release of GEICO, Plaintiffs filed a products liability suit against Huffines and Chrysler. The Medicaid lien alone against Plaintiffs was for nearly a quarter of a million dollars. Raymond was also rendered a quadriplegic as a result of the accident and died just two years later largely as a result of his injuries. *If* Plaintiffs were to ultimately prevail in their products liability case against Huffines and/or Chrysler, it is highly likely the damages awarded would be enormous. To dismiss Plaintiffs' timely filed suit against two entities in no way involved in the negotiation of the settlement with GEICO, when all sides acknowledge there was no intent to settle Plaintiffs' claims against them, is an obvious example of an absurd consequence. Huffines and Chrysler were not a party to the negotiations with GEICO, did not concede any rights or contribute any proceeds. Therefore, not only do I find this is an unduly

2

harsh result against Plaintiffs, more importantly it is a result not countenanced by our statutory law.

"The same rules of contractual interpretation apply to compromises as to other contracts." *Broussard v. Brown's Furniture of Lafayette, Inc.*, 13-596, p. 4 (La.App. 3 Cir. 12/11/13), 128 So.3d 640, 643, *writ denied*, 14-333 (La.4/11/14), 138 So.3d 605.    Louisiana Civil Code article 3076 provides "[a] compromise settles only those differences that the parties clearly intended to settle, including the necessary consequences of what they express." The Louisiana Supreme Court has stated that article "provides for two elements of a compromise:  (1) mutual intention of preventing or putting an end to the litigation, and (2) reciprocal concessions of the parties to adjust their differences." *Trahan v. Coca Cola Bottling Co. United, Inc.*, 04-100, p. 10 (La. 3/2/05), 894 So.2d 1096, 1104. Again, it is conceded by all parties that there was no intent to settle the claims against Huffines and Chrysler.  Moreover, there is no dispute that Huffines and Chrysler did not concede any rights or contribute any proceeds pertaining to the release of GEICO.

The parties' intent in executing a compromise is normally discerned from the four corners of the document; and extrinsic evidence is normally inadmissible to explain, expand or contradict the terms of the instrument. *Brown v. Drillers Inc.*, 93-1019 (La. 1/14/94), 630 So.2d 741.  However, when the parties to a compromise dispute its scope, they are permitted to raise factual issues regarding whether the unequivocal language of the instrument was intended to be truly unequivocal.  *Id*.   This permission is only granted when there is some "substantiating evidence" of mistaken intent. *Dimitri v. Dimitri*, 00-2641 (La.App. 4 Cir. 1/30/02), 809 So.2d 481, 485.

In *Brown v. Drillers Inc.*, supra, the Supreme Court held that "substantiating evidence" must establish:  either (1) that the releasor was mistaken as to what he or

3

she was signing, even though fraud was not present; or (2) that the releasor did not fully understand the nature of the rights being released or that the releasor did not intend to release certain aspects of his or her claim. I find the record in this case clearly establishes "substantiating evidence" of mistaken intent, or, at the very least, sufficiently posits facts that raise a genuine issue regarding the intent of the parties.

I find the trial court's reliance on this court's opinion in *Baudoin v. Montoya*, 07-910 (La.App. 3 Cir. 1/30/08), 974 So.2d 877, *writ denied*, 08-479 (La.5/2/08), 979 So.2d 1284, is misplaced. In that case, we found the plaintiff did not "present any evidence to prove his 'lack of intention to release all defendants, when the release plainly states all parties are released.'" In this case, Plaintiffs presented ample evidence to establish that Yolanda Cressy did not intend to compromise the claims asserted against Huffines and Chrysler herein. Plaintiffs filed suit against Huffines and Chrysler eight days before the release with GEICO. That suit was not dismissed by Plaintiffs following the release. Litigation proceeded for several years, involving motions, discovery and expert consultations. This clearly evidences that Yolanda Cressy did not intend to settle the underlying claims against Huffines and Chrysler. Yolanda Cressy's testimony also confirms she did not understand the nature of the rights being released and that she did not intend to release Huffines and Chrysler. Moreover, as Judge Keaty notes in her opinion and opposing counsel confirmed at oral argument Plaintiffs "did not intend to release Huffines and Chrysler when Yolanda signed the release with Wayne and GEICO in exchange for the $25,000.00 limit of the GEICO policy."

It is inescapable there was, at a bare minimum, a genuine issue regarding the true intent of the parties; in fact, *there is no factual dispute by anyone* that there was no intent "to release Huffines and Chrysler when Yolanda signed the release." Therefore, the law allows the courts to look beyond the four corners of the

4

document in question, regardless of whether it contains any ambiguity. To hide behind a supposed lack of ambiguity in the release document to affirm summary judgment herein, is not simply maintaining a harsh result, but is a disturbing misapplication of our law.

Therefore, I find there was substantiating evidence submitted below to raise, at a minimum, a genuine issue of material fact regarding Plaintiffs' intent in executing the release. Therefore, summary judgment was not appropriate and I would reverse the trial court's grant of summary judgment.