NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

17-1071

DONALD HODGE, JR., AS ADMINISTRATOR OF ESTATE OF DONALD

HODGE, SR.

VERSUS

JARED OERTLING, ET AL.

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2013-4620
HONORABLE RONALD F. WARE, DISTRICT JUDGE

**********

CANDYCE G. PERRET
JUDGE

**********

Court composed of Elizabeth A. Pickett, Billy H. Ezell, and Candyce G. Perret, Judges.

REVERSED AND REMANDED.

**Donald Carl Hodge, Jr.**
**Attorney at Law**
**4148 Palm St.**
**Baton Rouge, LA 70808**
**(337) 794-8873**
**COUNSEL FOR PLAINTIFFS-APPELLANTS:**
    **Donald Hodge, Jr., as Administrator of Estate of Donald Hodge, Sr.,**
    **and Rachel Hodge**

**Billy Edward Loftin, Jr.**
**Jeffrey A. Carrier**
**Loftin, Cain & LeBlanc**
**113 Dr. Michael DeBakey Drive**
**Lake Charles, LA 70601**
**(337) 310-4300**
**COUNSEL FOR DEFENDANT-APPELLEE:**
    **Jared Oertling**

**John W. Joyce**
**Laurence D. Lesueur**
**Barrasso, Usdin, Kupperman**
**909 Poydras, 24th Floor**
**New Orleans, LA 70112**
**(504) 589-9700**
**COUNSEL FOR DEFENDANT-APPELLEE:**
    **Vigilant Ins. Co.**

**Ken Begnaud**
**In Proper Person**
**5237 Moss St.**
**Lafayette, LA 70507**
**DEFENDANT-APPELLEE**

**PERRET, Judge.**

This case involves the interpretation of a settlement and release agreement that was signed by Plaintiffs, Donald Hodge, Jr., individually and as administrator of Donald Hodge, Sr.'s estate, and Rachel Hodge ("Appellants"), in a separate suit arising out of a quarantine imposed by the Louisiana Department of Agriculture and Forestry ("LDAF") on their late father's deer farm. Appellants filed the current suit against Jared Oertling, Ken Begnaud, Stacy Fontenot,[1] and Vigilant Insurance Company ("Appellees") prior to the settlement agreement at issue, alleging that Appellees' conduct during the quarantine harmed them, and the Hodges sought damages. Appellees filed a motion for summary judgment asserting the settlement agreement between the Hodges and the LDAF released Appellants' claims against Appellees. The trial court agreed with Appellees and granted summary judgment, dismissing Appellants' claims with prejudice. Appellants now appeal. For the following reasons, we reverse and remand to the trial court for further proceedings.

## FACTS AND PROCEDURAL HISTORY

Donald Hodge, Sr. (deceased) owned a whitetail deer farm ("Hodge Farm") in Calcasieu Parish. Sometime in October, it came to the LDAF's attention that the deer herd on the Hodge Farm was possibly infected with Chronic Wasting Disease likely transmitted by six does purchased from a Pennsylvania deer farm. Consequently, the LDAF issued a quarantine over the Hodge Farm on October 16, 2012. On or about the following day, Donald Hodge, Sr. died in a hunting accident. He never knew of the quarantine.

---

[1] Stacy Fontenot was removed as a Defendant in the Hodges' First Supplemental and Amending Petition.

Following the imposition of the quarantine, the LDAF began making attempts to locate the six infected does. However, no deer at the Hodge Farm had tags indicating they were the six does being searched for.

Appellants filed suit against the LDAF on March 20, 2013, docket number 2013-001366-E, seeking an injunction to lift the quarantine so the farm could be sold. In that case, Appellants asserted that the LDAF had no reason to believe the six does ever reached Hodge Farm and that, instead, the deer were delivered to Jared Oertling's deer farm in Mississippi. Appellants asserted that Mr. Oertling admitted that the six does never arrived at the Hodge Farm. However, regardless of Mr. Oertling's statement, the LDAF still required all deer's tags on the Hodge Farm to be scanned, at Appellants' expense, to ensure none of the deer came from the Pennsylvania farm. Additionally, Appellants asserted that the ongoing quarantine required them to sustain the farm at their expense and prevented them from putting the farm up for sale. In the LDAF lawsuit, Appellants not only sought the injunction against the quarantine, but also sought to recover damages from the LDAF that they allegedly suffered in connection with the quarantine.

On October 15, 2013, Appellants filed the instant suit against Appellees, Jared Oertling, Ken Begnaud, and Stacy Fontenot, asserting that they granted Appellees permission to feed the deer and check on their well-being during the quarantine. Instead, Appellants assert that Appellees moved bucks to doe pins to promote breeding, gave false statements to the LDAF investigators regarding the location of the six does which impeded the investigation, and conspired to blame Donald Hodge, Sr. Therefore, Appellants sought damages for Appellees' actions, which Appellants assert resulted in loss of income, expenses of maintaining the

2

Hodge Farm while under quarantine, costs associated with testing the deer, the loss of the value of the deer, and the cost of additional deer being born.

On November 4, 2013, Appellants, the Hodges, signed a settlement agreement with the LDAF ("LDAF Settlement") which dismissed the Hodges' suit against the LDAF. Under the terms of the LDAF Settlement, the LDAF was permitted to depopulate the Hodge Farm in exchange for the LDAF's agreement to manage the efforts and assume the costs associated with the depopulation.

Appellants amended their petition in the instant case against Appellees, Jared Oertling, Ken Begnaud, and Stacy Fontenot, on December 17, 2014, adding additional general damages, asserting joint liability amongst Appellees, removing Stacy Fontenot as a defendant, and adding Vigilant Insurance Company as a defendant.

Thereafter, Appellees all moved for summary judgment and alleged that the broad language in the LDAF Settlement released all claims arising from or in any way related to the quarantine, including those Appellants asserted in the instant suit. Appellees allege that the current suit is related to the quarantine, that Appellants allowed the LDAF to depopulate the Hodge Farm and are now seeking damages from Appellees that they suffered as a result of the LDAF Settlement. In support of summary judgment, Appellees attached the petition in the LDAF suit, excerpts from Donald Hodge's deposition, the LDAF Settlement, and the First Supplemental and Amending Petition in the instant suit against Appellees.

In opposition, Appellants asserted that the plain language of the LDAF Settlement does not release claims against Appellees. Additionally, Appellants argued that emails exchanged between Appellants and the LDAF, and on which Appellants relied in entering the compromise, are instructive as to the intent of the

3

parties to the LDAF Settlement. In support of their opposition, Appellants attached three exhibits. Exhibits A and B were the Affidavits of Donald Hodge and Rachel Hodge, attesting that both relied on email communications with the LDAF and that neither intended on releasing the instant claims. Exhibit C was email communications between Donald Hodge and Holden Hoggatt, attorney for the LDAF, representing that the purpose of the settlement agreement was to share the expenses associated with the depopulation of the deer herd and the release of the department and commissioner from liability resulting from the depopulation.

The trial court granted Appellees' motions for summary judgment, relying on *Cressy v. Huffines Hyundai McKinney*, 16-712 (La.App. 3 Cir. 2/22/17), 212 So.3d 683, *writ denied*, 17-510 (La. 5/19/17), 220 So.3d 751. The trial court determined that the broad language in the LDAF Settlement also compromised the Hodges' suit against Appellees. Appellants appeal the trial court's judgment, asserting two assignments of error: (1) that the trial court erred in granting summary judgment by finding that Appellants released Appellees by signing the LDAF Settlement, and (2) that the trial court erred in not considering affidavits and emails offered as evidence of the parties' intent when entering the settlement agreement. For the following reasons, we reverse the trial court's granting of Appellees' motions for summary judgment and remand this matter to the trial court for further proceedings.

## DISCUSSION

**Assignment of Error One:**

On appeal, this Court reviews grants of summary judgment de novo, applying the same standards as the trial court when considering whether summary judgment is appropriate. *Suire v. Oleum Operating Co.*, 17-117 (La.App. 3 Cir.

11/2/17), 235 So.3d 1215, *writs denied*, 18-271, 18-279 (La. 4/6/18), --So.3d--.

Louisiana Civil Code of Procedure Article 966(A)(3) provides that "a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." "A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate." *Cressy*, 212 So.3d at 686. Although seldom suitable for determinations based on subjective facts such as intent, "whether a plaintiff's claims against a certain defendant should be dismissed because of a release entered into by the plaintiff can be resolved in the context of a motion for summary judgment." *Id.*

The LDAF Settlement was a compromise entered into by Appellants and Mike Strain, in his capacity as the LDAF Commissioner.

> A compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.

*Hudson v. Progressive Sec. Ins. Co.*, 43, 857, p. 6-7 (La.App. 2 Cir. 12/10/08), 1 So.3d 627, 631, *writ denied*, 09-235 (La. 3/27/09), 5 So.3d 148. Therefore, we must consider the code articles governing compromises. As the supreme court set forth in *Brown Drillers, Inc.*, 630 So.2d 741, 748 (La. 1/14/94) (citations omitted):

> LSA-C.C. Art. 3071 further provides that a compromise is a written contract. It follows that the compromise instrument is the law between the parties and must be interpreted according to the parties' true intent. It also follows that the compromise instrument is governed by

the same general rules of construction applicable to contracts.

> LSA-C.C. Art. 2046 sets forth a general rule of construction, providing that "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no *further* interpretation may be made in search of the parties' intent." The underscored word "further" in this article signifies the true nature of contractual interpretation. The determination that the language contained in a contract is clear and explicit, in itself, involves an interpretative process. For that reason, LSA-C.C. Art. 2046 emphasizes that the process involves no further interpretation, as opposed to no interpretation at all.

Louisiana Civil Code Article 3076 also governs the interpretation of compromises and the determination of the scope of a compromise: "A compromise settles only those differences that the parties clearly intended to settle, including the necessary consequences of what they express." Additionally, we apply the "general principle that the contract must be construed as a whole and in light of the attending events and circumstances." *Brown*, 630 So.2d at 748; *see also* La.Civ.Code art. 2050.

Appellants contend that the settlement, taken as a whole, evidences their intent to only release parties related to the LDAF. Appellants cite *Brown*, 630 So.2d 741, in support of their arguments. In *Brown*, the supreme court determined that the scope of the compromise did not include a future claim for wrongful death damages against the same defendants that were a party to the settlement agreement. The supreme court concluded that the compromise only covered what is clearly contemplated by the document, which was not wrongful death damages, but only those personal injury claims of the decedent. The wrongful death claim did not arise until five years after the settlement and was not mentioned in the settlement document or even thought to be a possibility at the time the settlement was signed.

6

The supreme court determined the wrongful death claims were, therefore, not contemplated in and released by the settlement agreement's broad language.

On the other hand, Appellees contend that the LDAF Settlement contains broad language in section four that releases Appellees and that the other provisions in the settlement do not alter that broad scope of section four's release. Appellees rely on *Cressy*, 212 So.3d 683, in which this Court concluded a products liability claim against a vehicle's manufacturer for general and specific damages the plaintiffs sustained in a car accident was released by the broad language in the plaintiff's settlement agreement with the defendant driver and insurer. This Court expressed that it had no doubt that the plaintiffs did *not* intend to release the defendants in the products liability suit. Nevertheless, this Court concluded that the broad language released all claims against persons and corporations arising out of the accident. *Id.* at 692. Judge Cooks authored a dissent and pointed out that "*there is no factual dispute by anyone* that there was no intent" to release the products liability defendants. *Cressy*, 212 So.3d at 694 (Cooks, J., dissenting). Additionally, Judge Cooks opined that the majority's decision led to an absurd and harsh result, which is in contravention of La.Civ.Code art. 2046.

Accordingly, we must determine if the trial court properly granted summary judgment, finding that the LDAF Settlement released Appellees. To do so, we look at the terms of the LDAF Settlement, as well as the "attending events and circumstances." *Brown*, 630 So.2d at 748.

The LDAF Settlement states:

> THIS SETTLEMENT AGREEMENT AND RELEASE **is made by and among Mike Strain**, in his capacity as the Commissioner for the Louisiana Department of Agriculture and Forestry (referred to herein as the "Commissioner" and the "Department"),

7

**and Donald Hodge, Jr.**, individually and in his capacity as the Executor of the Succession of Donald Hodge, Sr., **and Rachel Hodge**, (collectively referred to herein as the "Hodges)"[.]

WHEREAS, on March 20, 2013, Donald Hodge, Jr. and Rachel Hodge filed a Petition for Preliminary and Permanent Injunction and Damages against Mike Strain in his capacity as Commissioner for the Louisiana Department of Agriculture and Forestry in the 14th Judicial District Court, Parish of Calcasieu, captioned as *Donald Carl Hodge, Jr., individually and as Executor of the Estate of Donald Carl Hodge, Sr., and Rachel Hodge v. Mike Strain in his capacity as the Commissioner for the Louisiana Department of Agriculture and Forestry*, No. 2013-1366 Div. "E" (the "Lawsuit"); and

WHEREAS, the Lawsuit resulted in [a] Judgment of Dismissal without Prejudice[.]

. . . .

WHEREAS, **the parties hereto** wish to settle fully and finally **settle all disputes between them** related to and arising from the deer and premises of the Hodge Farm[], upon the terms and conditions set forth herein[.]

. . . .

3. CONSIDERATION & TERMS

(a) Considering that the exposed animals traced to the Hodge farm herd cannot be located, the untimely death of Donald Hodge, Sr., the grave danger CWD poses to the Louisiana deer population and the parties' mutual desire to ensure the safety of the Louisiana deer population, the significant expenses associated with a sixty-month quarantine, and the expected births of many more deer subject to the quarantine, the **Department hereby agrees to pay** certain limited expenses **in exchange for full, complete and final settlement of all claims and matters relating to and/or arising from the subject matter of the Lawsuit**.

. . . .

4. RELEASE OF LIABILITY

Donald Hodge, Jr., individually and as Executor for the Succession of Donald Hodge, Sr., and Rachel Hodge, further declare that, for and in consideration of

the Department's assistance to be provided as described herein, they DO HEREBY EXPRESLY RELEASE, ACQUIT, AND FOREVER DISCHARGE the State of Louisiana, the Commissioner of Agriculture, the Department of Agriculture and Forestry, as well as its employees, administrators, agents, officers, assigns, representatives, assisting state agencies, sub-contractors, and any **and all other parties, whomsoever**, **from any and all past, present, and/or future claims, demands, damages, compensation, medical expenses, wages, rights, punitive damages, causes of action and rights of action, whatsoever,** which Donald Hodge, Jr., individually and as executor for the Succession of Donald Hodge, Sr., and Rachel Hodge, have and/or might have and/or to which they are or may be entitled and/or to which may hereafter accrue to them, known or unknown, foreseen and unforeseen, under the laws of the State of Louisiana and any and all other such laws whatsoever, in anyway relating to or arising out of this Agreement. This release shall be enforceable to the fullest extent permitted by the law of the State of Louisiana.

. . . .

13. ENTIRE AGREEMENT

(a) The parties declare that the terms of this agreement have been completely read and are fully understood and voluntarily accepted **for the purpose of making a full and final compromise, adjustment, and settlement** *of the present litigation*, on account of the danger posed by Chronic Wasting Disease, and for the express purpose of precluding forever any further or **additional claims** by the Hodges and/or their representatives, heirs, successors, subsequent purchasers and/or assigns **against the State of Louisiana, the Commissioner of Agriculture, Dr. Michael "Mike" Strain, and/or the Department of Agriculture**.

. . . .

(a) The parties further agree that the Department may file any and all necessary pleadings to dismiss with prejudice any subsequent litigation asserted by the parties which arises from or relates to the subject matter of this Agreement.

(Emphasis added). The language in the LDAF Settlement distinguishes this case from *Cressy* because, when considered in its entirety as we are instructed to do by La.Civ.Code art. 2050, the LDAF Settlement does not release Appellants' claims against Appellees. The above provisions set forth that the agreement is between Appellants and the LDAF, that the agreement is directly related to the petition for injunctive relief filed against the LDAF for the full and final compromise of that litigation. Therefore, as a whole, the agreement limits the scope of the release to the parties to the settlement agreement for the purpose of dismissing Appellants' suit against the LDAF, in return for the LDAF disposing of the Hodge Farm herd and lifting of the quarantine.

Additionally, Appellants' claims against Appellees involve not only different conduct than the alleged conduct of LDAF, but also different damages than those sought in the suit against the LDAF. In their suit against the LDAF, Appellants asserted the LDAF arbitrarily and capriciously maintained the quarantine on the Hodge Farm, despite receiving information that the infected deer were not, and had never been, on the Hodge Farm. In that suit, Appellants sought an injunction against the quarantine, damages for the costs of maintaining the Hodge Farm, and damages for the continued inability to sell the Hodge Farm. On the other hand, in their suit against Appellees, Appellants alleged Appellees moved deer, without permission, from their pins to promote breeding during the quarantine; removed deer from the Hodge Farm without permission; gave false statements to the LDAF which impeded the LDAF's investigation; conspired against Appellants in order to protect their own interests during the quarantine; and that Mr. Begnaud has kept deer owned by the Hodge Farm at his Carencro farm without compensating Appellants for those deer. In the current suit, Appellants

10

seek damages for loss of income, costs of maintaining the Hodge Farm, costs of testing the deer tags, the value of the deer maintained on Mr. Begnaud's Carencro farm, the lost value of the deer, intentional infliction of emotional distress, plus other general damages. We find this case to be distinguishable from *Cressy*.

Accordingly, based on the language of the LDAF Settlement, as well as the conduct and relief sought in both petitions, we find that the trial court erred in granting Appellees' motions for summary judgment and reverse the trial court's judgment.

**Assignment of Error Two:**

Appellants' second assignment of error asserts that the trial court should have considered extrinsic evidence, which was proffered, in its consideration of whether material issues of fact existed as to the parties' intent. However, intent is normally determined from the four corners of the document. *Brown*, 630 So.2d 741. Although extrinsic evidence is permitted when a dispute arises regarding the scope of the compromise, such circumstances are limited to situations in which substantiating evidence exists establishing either "(1) that the releasor was mistaken as to what he or she was signing . . . or (2) that the releasor did not fully understand the nature of the rights being released or that the releasor did not intend to release certain aspects of his or her claim." *Brown*, 630 So.2d at 749.

Although the second circumstance exists here, we do not find that considering parol evidence is necessary in this case because the intent of the parties to the settlement can be determined from the four corners of the agreement. "When . . . a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is

11

answered as a matter of law and thus summary judgment is appropriate." *Id*. at 749-50.

After a review of the record, we find the intent of the parties can be determined from the language of the LDAF Settlement and attending events and circumstances, therefore, consideration of extrinsic evidence is not necessary to determine the parties' intent. Accordingly, we find no merit to Appellants' second assignment of error.

## CONCLUSION

For the foregoing reasons, we reverse the trial court's judgment granting Appellees' motion for summary judgment and remand the case for further proceedings consistent with this judgment. All costs of appeal are assessed to Appellees: Vigilant Insurance Company, Ken Begnaud, and Jared Oertling.

**REVERSED AND REMANDED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3.